712 So.2d 640 (1998)
In the Matter of the SUCCESSION OF Julius Spencer JONES.
No. 97 CA 1428.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*641 Ron Macaluso, Hammond, for Appellant Jonas Martin.
Fred H. Belcher, Jr., Katherine M. Laporte, Baton Rouge, for Appellee Jane Jones.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal from a judgment of the trial court in a succession matter. Appellant, Jonas T. Martin, filed a petition of intervention and declaratory judgment in the succession proceedings of his grandfather, Julius Spencer Jones (decedent). In response, appellee, Jane Martens Jones, who was decedent's surviving wife, filed a peremptory exception raising the objection of no cause of action. After a hearing, the trial court found that Jonas Martin was not a forced heir to the succession of decedent; thus, the intervention was not proper. Accordingly, the trial court granted the peremptory exception raising the objection of no cause of action and dismissed appellant's intervention at his cost.

*642 BACKGROUND
Decedent was originally married to Hermie Jones. During their marriage, decedent and Hermie adopted a daughter, June. They had no other children. Hermie died in 1967. In 1968, June married Shelby Martin without the knowledge or consent of decedent. Decedent did not approve of the marriage between June and Shelby and in fact, had a strong dislike for Shelby. In 1976, Jonas Martin was born of the marriage between June and Shelby. June and Shelby had no other children.
When Hermie's succession was opened, June and decedent became engaged in a dispute over the distribution of the assets. During the litigation which ensued, decedent allegedly told June that if she continued with the litigation, their relationship would end. As a result of this dispute, June did not maintain any further communications with decedent, with the exception of a card allegedly sent in 1981 or 1982, a letter allegedly sent in 1987 and a phone call made to decedent's residence in late 1992 or early 1993.
In December 1976, decedent married appellee, Jane Martens Jones (Jane). No children were born of this marriage. On July 13, 1990, decedent executed a last will and testament. In this will, decedent made two particular bequests of money to two charities and left the remainder of his property to Jane. In the will, decedent specifically disinherited June because she "failed without just cause to communicate with [decedent] since the year 1974...."
Decedent died on May 22, 1993. Jane filed a petition for probate of decedent's will and a petition for possession on July 13, 1993. On the same date, an order of probate was signed and Jane was placed in possession of the succession property through a judgment of possession. On July 13, 1994, June filed a petition to nullify the disinherison and to be recognized as a forced heir to decedent's succession. After a trial, the trial court rendered judgment in favor of Jane in May 1996, finding that the disinherison of June in decedent's will was valid. On July 10, 1996, June appealed from the judgment of the trial court; however, because June failed to timely file a brief, her appeal was subsequently dismissed by order of this court on December 19, 1996, and that judgment is now final.

FACTS
On September 12, 1996, Jonas filed a petition for intervention and declaratory judgment in decedent's succession. Through this petition, Jonas sought to be recognized as a forced heir to decedent's succession. Jonas asserted that because his mother, June, had been disinherited and he was the only grandchild of decedent, he was entitled to inherit in his own right as the nearest heir in the direct line of descendants. Jane filed a peremptory exception raising the objection of no cause of action on October 1, 1996. Jane argued that Jonas was not a forced heir to decedent's succession because LSA-C.C. art. 1493 only allowed grandchildren to be forced heirs through representation of a predeceased child; thus, since Jonas' mother was still alive, Jonas could not represent June in decedent's succession. Accordingly, Jonas did not qualify as a forced heir to decedent's succession.
After a hearing, the trial court took the matter under advisement. On February 13, 1997, the trial court issued reasons for judgment in which it found that Jonas was not a forced heir and his intervention was therefore improper. A judgment sustaining the exception raising the objection of no cause of action and finding that Jonas was not a forced heir was signed on March 10, 1997. It is from this judgment that Jonas appeals, raising one issue: "Did the Trial Court err in applying the law and finding that Jonas Martin is not a forced heir to the succession of Julius Spencer Jones?"

ANALYSIS
This appeal involves a dispute over whether a grandchild can be a forced heir to the succession of his grandfather in his own right and thereby claim a forced portion of the estate, where the grandchild's parent has been validly disinherited, but is alive at the time of the grandparent's death, and where there are no other living descendants in the first degree.
*643 The applicable version of LSA-C.C. art. 1493[2] provides as follows:
Donations inter vivos or mortis causa cannot exceed three-fourths of the property of the disposer, if he leaves, at his decease, one child; and one-half, if he leaves two or more children.
Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.
Under LSA-C.C. art. 1493, descendants of any degree can be forced heirs; however, these descendants are "only counted for the child they represent." The dispute in this case is whether this article imposes a requirement or condition that descendants beyond the first degree can only become forced heirs through their representation of a predeceased child of the decedent. Jonas argues that this phrase in LSA-C.C. art. 1493 does not restrict a grandchild from becoming a forced heir to his grandparent's succession to those instances wherein the grandchild is representing a predeceased child of the grandparent. Thus, Jonas contends that although he cannot represent June in the succession of decedent because June is alive and has been disinherited, he is a forced heir to the succession in his own right and therefore is entitled to the forced portion of the estate. We disagree.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. LSA-C.C. art. 1493 is clear and unambiguous. We find that the legislature used the word "represent" purposefully to restrict the instances wherein grandchildren could qualify as forced heirs to a grandparent's succession. This interpretation comports with the clear wording of the statute and does not lead to absurd circumstances. Moreover, this interpretation does not conflict with the policy underlying the concept of forced heirship in Louisiana. This concept grew out of a social interest in the organization, duration and stability of families. Frederick William Swaim, Jr. & Kathryn Venturatos Lorio, Louisiana Civil Law Treatise, Vol. 10, Successions and Donations, § 11.2 at 262 (1995). Thus, through forced heirship, each successive generation was guaranteed some means with which to help care for itself through the receipt of a portion of the prior generation's succession property.
The condition that descendants beyond the first degree can only be forced heirs where they represent a predeceased child of the first degree is not in derogation of this policy. Particularly, where a grandparent outlives his child, the grandchild should be allowed to represent his deceased parent and become a forced heir to the grandparent's succession. This would ensure that the living heirs in the closest generation to the grandparent receive property with which they can help care for themselves and ultimately pass on to their children. If representation of the predeceased child by the grandchild was not allowed, the grandchild would be without any other inherited means of assistance. Contrarily, where the child of a grandparent is still alive, but has been validly disinherited or is unworthy of inheriting, *644 the policy behind forced heirship is not furthered by allowing the grandchild to claim a forced portion of the grandparent's succession. If the grandparent desired that the grandchild inherit all or part of the estate, the grandparent (depending on the circumstances) could execute a will naming the grandchild as a legatee.
We reject Jonas' argument that LSA-C.C. art. 973 warrants an interpretation of LSA-C.C. art. 1493 which would allow a grandchild to come to the succession of a grandparent as a forced heir in his own right. LSA-C.C. art. 973 provides as follows:
The children of the person declared unworthy to succeed, being admitted to the succession ab intestato in their own name and without the aid of representation, are not excluded by the fault of their father; but the father can not claim, in any case, upon the property of that succession, the usufruct which the law grants him in certain cases.
We fail to find LSA-C.C. art. 973 persuasive to our interpretation of LSA-C.C. art. 1493 for several reasons. By the clear language of Article 973, it contemplates the situation where the children come to an intestate succession as an heir. (In the present case, there was a will executed, thus, the succession is not an intestate one. While we recognize that the laws of intestate successions apply to the portions of a will which have been declared invalid, the intestate laws do not become applicable until after there has been a determination that portions of a will are invalid. Thus, the intestate codal provisions should not be used to determine if a will is invalid.)
Moreover, LSA-C.C. art. 973 only refers to the situation where the heir has been declared unworthy. It makes no reference to the situation where an heir has been disinherited. The legislature could have easily referenced disinherited heirs in this provision if it had chosen the same result to expressly occur in the case of disinherison. Additionally, the legislature could have enacted a similar article in that part of the code that addresses the disinherison of heirs, but it did not do so.
Finally, this article refers to the children coming to the succession in their own right. Thus, it is not meant to apply to those situations where some other statutory provision or legal principle precludes a child from coming to the succession in his own right.

CONCLUSION
For these reasons, we find that the trial court was correct when it determined that Jonas was not a forced heir to decedent's succession. The judgment of the trial court is affirmed. Jonas is assessed with the costs of this appeal.
AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Both parties agree that the version of LSA-C.C. art. 1493 which applies to the determination of this issue is the version that was contained in the Louisiana Civil Code of 1870, as amended by La. Acts 1981, No. 884, § 1. This article was subsequently amended by La. Acts.1989, No. 788 and La. Acts 1990, No. 147, which amendments were declared unconstitutional in their entirety by the Louisiana Supreme Court. Succession of Lauga, 624 So.2d 1156, 1170 (La.1993); Succession of Terry, 624 So.2d 1201, 1202 (La.1993). The correct law to apply is the law which was in effect prior to the invalid amendments. Succession of Terry, 624 So.2d at 1202. In October 1995, the voters in Louisiana approved an amendment to LSA-Const. art. 12, § 5. This amendment removed the constitutional bar to the amendments to LSA-C.C. art. 1493, which amendments had previously been declared unconstitutional. The constitutional amendment became effective on November 23, 1995. Thus, the current version of LSA-C.C. art. 1493 reflects the changes which were previously declared unconstitutional. However, pursuant to LSA-R.S. 9:2501, the amendment applied only to successions of persons who died after December 31, 1995. For these reasons, the applicable version of LSA-C.C. art. 1493 in this appeal is that version which was in existence prior to the 1989 and 1990 amendments and this is the version to which we will refer in the opinion when we reference LSA-C.C. art. 1493.